UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE ASSOCIATION OF RETIREES, SALLY MORRISSEY, PAUL LYNCH, DOROTHY DAVIS, and CATHERINE RICHARD,<br><br>        Plaintiffs,<br>v.<br><br>BOARD OF TRUSTEES OF THE MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, PETER M. LESLIE, BENEDETTO VIOLA, CATHERINE R. SULLIVAN, RICHARD T. METIVIER, GEORGE A. BURGOYNE, KENNETH L. WILLIAMS, DMITRI N. BALATSOS, and BRUCE L. POLIQUIN,<br><br>        Defendants. | Docket no. 1:12-cv-0059-NT |

**OPINION AND ORDER ON
MOTION TO INTERVENE
AND MOTION TO STAY**

Before the Court is a motion to intervene as plaintiffs in this case filed by the Maine State Employees Association ("**MSEA**"), and its members Rona Backstrom, Kathleen Kadi and Robert Ruhlin; the Maine Education Association ("**MEA**"), and its members Robert Walker and Philip Gonyar; and the Maine State Troopers Association ("**MSTA**"), and its members Craig Poulin and Timothy Culbert, (collectively, "**the Proposed Intervenors**"). Also before this court is Defendants'

motion to stay the motion to intervene. For the reasons stated below, the motion to intervene is **GRANTED**, and the Defendant's motion to stay is **DENIED** as moot.

## I. Background

On February 13, 2012, Plaintiffs Maine Association of Retirees ("**MAR**") and four of its individual members filed a complaint for declaratory and injunctive relief alleging that certain amendments to Maine's statute providing cost-of-living adjustments ("**COLA**") for Maine state employee retirement benefits (the "**2011 Amendments**")[1] violate Article I, Section 10 of the United States Constitution (the contracts clause) and constitute a taking without just compensation in violation of the Fifth Amendment of the Constitution. The 2011 Amendments prohibit any COLAs in years 2011, 2012, and 2013, and limit the power of the Board of Trustees of the Maine Public Employees Retirement System ("**MePERS**") to enact COLAs thereafter to 3% per year, applied only to the first $20,000 of retirement benefits.

The Complaint requests a declaration that the 2011 Amendments violate the Constitution and an injunction directing the nominal defendants—MePERS's Board of Trustees and the Board's eight individual members—to make COLAs, both retroactive and going forward, according to the pre-2011 statute. The Complaint also includes a claim under 42 U.S.C. § 1983 and an attendant request for costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

---

[1] The Amendments are found at Laws of Maine 2011, c. 380, Sections T-10 and T-21. They amend 5 M.R.S.A. § 17806(1)(A), which sets forth the formula for determining cost-of-living adjustments for Maine state employee retirement benefits.

MAR[2] makes its claims on behalf of the approximately 28,000 Maine state retirees affected by the 2011 Amendments and requests certification as a class action pursuant to Fed. R. Civ. P. 23. On April 4, 2012, the MSEA,[3] MEA,[4] and MSTA[5] moved to intervene as named plaintiffs in this case. Plaintiffs oppose intervention. The Defendants assert that the motion to intervene, which they argue turns largely on whether the proposed plaintiff class is adequately represented by current counsel, should be postponed until the Plaintiffs' motion for class certification is decided.

## II. Discussion

In this case, the Proposed Intervenors do not argue that they have a right to intervene in this suit,[6] only that the Court should permit them to intervene pursuant to Fed. R. Civ. P. 24(b). On a timely motion to intervene pursuant to Rule 24(b), the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact."

The parties do not dispute the timeliness of the Proposed Intervenors' motion or that the Proposed Intervenors' claims are essentially identical to Plaintiffs' claims. That these necessary conditions of commonality and timeliness have been

---

[2] MAR alleges that it has over 15,000 members.
[3] The MSEA has approximately 1,784 retirees, surviving spouses, and significant others within its ranks.
[4] The MEA has approximately 5,314 retired members.
[5] The MSTA has approximately 400 retired members.
[6] Under Fed. R. Civ. P. 24(a), intervention as of right is provided for anyone who files a timely motion to intervene and who:
> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

satisfied, however, does not end the analysis. *See e.g. Mass. Food Ass'n v. Mass Alcoholic Bev. Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999) (upholding denial of permissive intervention, though motion was timely and proposed intervenors' defenses included common questions of law.) Rather, the Court must exercise its discretion by balancing the potential benefits of allowing intervention against the potential drawbacks thereof. *See Daggett v. Comm'n on Gov't Ethics and Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999). In this inquiry, the Court "enjoys a very broad discretion" and "can consider almost any factor rationally relevant." *Id.*

The Proposed Intervenors comprise about 7,500 members of the purported class. They assert three reasons the Court should allow intervention. First, they claim that the current named Plaintiffs may be unable to adequately finance this litigation.[7] Second, they allege that MAR is "hostile" to union involvement in this litigation.[8] Finally, they claim that they bring a unique and relevant historical perspective and legal expertise to the Plaintiffs' claims.

---

[7] The only basis the Proposed Intervenors provide for questioning the ability of the Plaintiffs to finance this litigation is that they are unaware whether MAR collects dues from its members. They surmise that if MAR does not collect dues, there may be no source of funds to finance the litigation. There is no reason to suppose from the handling of the case thus far that Plaintiffs' attorneys are unable to finance this litigation or that they will fail to zealously advocate Plaintiffs' claims. The Court does not consider this reason to be an adequate justification for allowing the Plaintiffs to intervene.

[8] The MSEA, MEA, and MSTA have historically represented their members for purposes of collective bargaining prior to their retirement. As support for their claim that MAR is hostile to union involvement, the Proposed Intervenors attach the affidavit of Christopher Quint who avers that Florence Johnson, the Executive Director of MAR, upon learning that the MSEA, MEA and MSTA were moving to intervene, told Quint that "it would be best for 'Labor' to stay out of this suit due to 'Labor's' negative perception amongst the public." Affidavit of Christopher Quint at 2. (Doc. 6). The Court notes that even if MAR is hostile to union involvement in the suit, the hostility does not create a divergence of interest between the named Plaintiffs and the Proposed Intervenors for purposes of this case. The Proposed Intervenors' complaint contains essentially the same claims and requests for relief as the Plaintiffs' complaint, and all of the proposed class members, whether union members or not, appear to have the same interest in invalidating the 2011 Amendments.

The Proposed Intervenors' third argument for intervention is their strongest. MEA and MSEA were involved in litigation against the State regarding claims of constitutional violations arising out of the modification of retirement benefits. *See Parker v. Wakelin*, 123 F.3d 1 (1st Cir. 1997); *Spiller v. State*, 627 A.2d 513 (Me. 1993). They claim that, as a result of their involvement in these cases, the MSEA was actively involved in the legislative process which led to the enactment of the 1999 legislation which is at issue in the present litigation.[9] They assert that this historical involvement in the question of retirement benefits provides them with helpful expertise on the questions presented in this case, as well as a unique perspective on any wages, benefits, or conditions of employment the unions may have agreed to forego in exchange for enactment of the 1999 legislation. *See Daggett,* 172 F.3d at 116 (Lynch, J. concurring) (whether the proposed intervenors offer helpful evidence unavailable from other parties should be considered in deciding permissive intervention).

Typically, the drawbacks of intervention include delay or complication arising out of the insertion of another party into the litigation. *See Daggett,* 172 F.3d at 113. In this case, the Court finds that the benefits offered by the Proposed Intervenors outweigh the inefficiencies caused by the addition of parties. The Court also notes that this case involves substantial matters of public interest. The Proposed Intervenors represent important organizations which represent a large number of potential members of the proposed class. *Id*. at 116 (Lynch, J. concurring)

---

[9] Paragraph 18 of the Complaint alleges that, in 1999, the Legislature made a "solemn contractual commitment" never to alter certain sections of the public employee retirement statutes dealing with calculation of retirement benefits, and it bases its claims in part on this legislation.

(intervention might more readily be allowed in a case concerning matter of public interest).

## CONCLUSION

For the reasons stated, the motion to intervene is **GRANTED**. Defendants' motion to stay is **DENIED** as moot.

SO ORDERED.

                                                /s/ Nancy Torresen
                                                United States District Judge

Dated this 2nd day of October, 2012.